## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

SECURITIES AND EXCHANGE
COMMISSION,

              **Plaintiff,**

     v.

MAGNUM D'OR RESOURCES, INC.,
JOSEPH J. GLUSIC, SHANNON ALLEN,
DWIGHT FLATT, and
DAVID DELLA SCIUCCA, JR.,

              **Defendants.**

     :
     :
     :
     :
     :
     :
     :
     :
     :
     :
     :
     :
     :

### COMPLAINT

Plaintiff Securities and Exchange Commission alleges:

### INTRODUCTION

1.    From at least 2008, Magnum d'Or Resources, Inc. issued misleading news releases touting the company's growth that increased the liquidity of its stock. At the same time, Magnum used bogus consultants to funnel more than $7 million in illicit stock proceeds back into the company, all in violation of the registration and anti-fraud provisions of the federal securities laws. During the relevant time period Defendant Joseph J. Glusic served as Magnum's sole officer.

2.    In facilitating this kickback scheme, Magnum garnered the assistance of Defendants Dwight Flatt, David Della Sciucca, Jr., and Shannon Allen, to whom Magnum issued stock pursuant to false Form S-8 registration statements. Contrary to the requirements of Form S-8 registration statements, Flatt, Sciucca, and Allen provided Magnum little or no permissible

consulting services.  Instead, Flatt, Sciucca, and Allen liquidated their S-8 stock, kept a portion of the sales proceeds, and returned more than $7 million of the remaining sales proceeds to Magnum under the guise of loan agreements.

3.      Through their conduct, the Defendants each violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c).  Magnum and Glusic also violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.  Unless restrained and enjoined, the Defendants are reasonably likely to engage in future violations of the federal securities laws.

## DEFENDANTS

4.      Magnum is a Nevada corporation formerly headquartered in Fort Lauderdale, Florida, with its principal place of business now in Hudson, Colorado.  It purports to convert scrap tires into rubber compounds for use in various products.  Magnum's common stock (ticker symbol "MDOR") is registered with the Commission pursuant to Section 12(g) of the Exchange Act, and is quoted on OTC Link operated by OTC Markets Group, Inc.

5.      Glusic, 53, is a resident of Henderson, Nevada.  Glusic served as Magnum's Chief Executive Officer and President during the relevant time period, including when Magnum had its principal place of business in Fort Lauderdale.

6.      Flatt, 28, is a resident of Delray Beach, Florida.  He purportedly is a self-employed consultant.  Flatt received Magnum S-8 stock, liquidated the stock, and funneled sales proceeds back to Magnum.

7. Sciucca, 26, is a resident of Fort Lauderdale, Florida. He purportedly is a self-employed consultant. Sciucca received Magnum S-8 stock, liquidated the stock, and funneled sales proceeds back to Magnum.

8. Allen, 35, is a resident of Miami, Florida. He purportedly is a self-employed consultant. Allen received Magnum S-8 stock, liquidated the stock, and funneled sales proceeds back to Magnum.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.

10. This Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida because the Defendants' acts, transactions, practices, and courses of conduct giving rise to the violations alleged in this Complaint occurred in the Southern District of Florida. In addition, Magnum's principal place of business during the relevant time period was in the Southern District of Florida, and Flatt, Sciucca, and Allen reside in the Southern District of Florida.

11. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, transactions, practices, and courses of conduct set forth in this Complaint.

## FACTUAL ALLEGATIONS

### I.      Magnum's Sham S-8 Stock Transactions

12.     Starting no later than 2008, Magnum issued millions of S-8 stock to purported consultants, including Flatt, Sciucca, and Allen.   Magnum issued these unrestricted shares pursuant to Form S-8 registration statements filed on December 28, 2007 and June 29, 2009. Flatt, Sciucca, and Allen did not perform the kinds of services for Magnum that would allow them to legally receive S-8 stock.

13.     Form S-8 is available to register the offer and sale of a company's stock to employees or consultants under certain circumstances.   The eligible employees or consultants must perform permissible services that are not in connection with a capital-raising transaction and do not indirectly promote or maintain a market for the stock.

14.     Form S-8 is not available to register offers and sales of securities to consultants where, by prearrangement or otherwise, the issuer or a promoter controls or directs the resale of the securities in the public market, or the issuer or its affiliates directly or indirectly receive a percentage of the proceeds from such resales.   In addition, consultants who provide investor relations or shareholder communications services may not receive S-8 stock because of the promotional nature of their service.

15.     An improper use of S-8 shares – i.e., under the prohibited circumstances described above – is not an effective Section 5 registration of the S-8 shares or their subsequent sale.

16.     Glusic signed the June 29, 2009 Form S-8 registration statement on behalf of Magnum.   The Form S-8 falsely represented Magnum would issue shares as compensation to consultants of the company.   Furthermore, Magnum attached an exhibit to the statement titled

"2009 Consultant Stock Option, SAR and Stock Bonus Plan" that falsely represented that "no person shall be a Participant in this Plan in consideration for consulting or other services related to capital raising activities for the Company or related to any stock promotion activities for the Company."

17.     While Glusic did not sign Magnum's December 28, 2007 Form S-8 registration statement, he authorized all issuances of S-8 stock pursuant to this statement. This Form S-8 also falsely represented Magnum would issue shares as compensation to consultants of the company, and included a Consultant Stock Option, SAR and Stock Bonus Plan that contained the same false statement in the 2009 Plan quoted above.

18.     From no later than July 2008, Magnum illegally issued S-8 stock pursuant to the Form S-8 registration statements. Specifically, Magnum issued S-8 stock to Flatt, Sciucca, and Allen that did not contain required restrictive legends because Glusic wrongfully advised Magnum's transfer agent that Mangum properly issued the shares pursuant to the Form S-8 registration statements. In reality, Flatt, Sciucca, and Allen provided Magnum few, if any, permissible services, and should not have received S-8 stock. In fact, their "service" to the company was to funnel profits they had received from selling Magnum S-8 stock back to the company.

19.     To further the ruse that Flatt, Sciucca, and Allen were providing consulting services to Magnum, the company entered into multiple agreements with them from January 2008 through October 2009. According to the agreements, which were boilerplate, Flatt, Sciucca, and Allen would, for the most part, "act as a consultant to the Company on such matters as the Company may reasonably request."

20.     Upon receipt of Magnum S-8 stock, Flatt, Sciucca, and Allen sold the stock and returned a substantial portion of the sales proceeds to Magnum.  Flatt, Sciucca, and Allen's monthly brokerage account statements reflect hundreds of transactions showing that following receipt of Magnum S-8 stock, Flatt, Sciucca, and Allen: 1) deposited most of their shares at Bahamian broker-dealer Gibraltar Global Securities; 2) sold their shares usually within days of depositing their S-8 stock; and 3) either wired proceeds directly to Magnum's bank accounts from their Gibraltar accounts or indirectly through their personal bank accounts.

21.     Flatt, Sciucca, and Allen's Gibraltar accounts enabled them to work in concert with one another.  In addition to using Gibraltar as a means through which to funnel S-8 share sales proceeds to Magnum, these S-8 recipients used Gibraltar as a means to freely transfer their S-8 shares and sales proceeds to one another.  For example, on June 23, 2009 Flatt transferred two million Magnum S-8 shares to Sciucca, who liquidated those shares and wired more than $1.7 million to Flatt.  During the same time, Flatt transferred funds to Magnum.

22.     Ultimately, Flatt, Sciucca, and Allen received more than $10 million from the sale of their Magnum S-8 stock.  They then transferred more than $7 million of these proceeds to Magnum under the guise of loans.

23.     To disguise the fraudulent transactions, Magnum concocted sham promissory notes, pursuant to which Flatt, Sciucca, and Allen purportedly agreed to loan the company millions of dollars.  Magnum entered into the promissory notes with Flatt, Sciucca, and Allen and other Magnum S-8 recipients around the time it received S-8 stock sale proceeds.  However, many of the note amounts do not match up with the amount of S-8 stock sale proceeds Magnum received.  Further, all of the funds Flatt, Sciucca, and Allen purportedly provided in exchange for the notes were derived from S-8 stock sales.

24.     The Form S-8 registration statements were materially false and misleading because they stated Magnum would issue the S-8 stock for permissible consulting services. Based on their efforts to conceal the transactions, and their knowledge that the S-8 stock was not issued for permissible services, Magnum and Glusic knew they were participating in a fraudulent S-8 kickback scheme.

## II.     Misrepresentations and Omissions in Connection with the Scheme

25.     In addition to making false statements in its Form S-8 registration statements, Magnum made numerous material misrepresentations and omissions in press releases concerning the company's operations.  As a result, there was increased liquidity in Magnum stock, enabling Magnum's S-8 stock recipients to liquidate a significant portion of their shares into the market.

26.     Beginning no later than July 2008, Magnum touted in press releases and on its website that it had more than $130 million in contracts for its products.  The contracts, however, were "no minimum" contracts that did not require the purchase of any specific amount of Magnum's products.  In fact, as of its year end September 30, 2009, Magnum had generated only $85,070 in revenues.  Nevertheless, Magnum continued to tout the exaggerated value of these contracts on its website.

27.     Magnum first announced the increase in contracts to $130 million in a July 2, 2008 press release.  On that day, Magnum's trading volume spiked to 56,550 shares, with the stock price closing at 36 cents.  The previous day, Magnum's volume was 1,400 shares and its closing price was 25 cents per share.

28.     Later, in March and April 2009, Magnum claimed in press releases to have secured $15 million in financing.  In a March 18, 2009 press releases, Glusic was quoted as saying: "The $15,000,000 funding will be used to immediately expand [one of Magnum's

facilities] and increase capacity." These claims were false. On January 6, 2010, Magnum announced the financing "is still proceeding forward although it has been delayed several times. Magnum will update the market on the current status of this funding avenue in the near future." There is no indication that Magnum ever received this funding.

29.     Starting in April 2009, Magnum touted its plan to acquire a tire landfill. In various press releases, Magnum repeatedly made it appear the acquisition was imminent. However, Magnum did not disclose the target tire company was going through Chapter 11 bankruptcy. Months later, in Magnum's August 2009 Form 10-Q, it disclosed this information for the first time.

30.     On April 28, 2009, Magnum's trading volume spiked to more than two million shares. In comparison, its average trading volume from January through March 2009 was approximately 31,424 shares. In addition, Magnum's stock price closed at $1.54 on April 28, 2009 when the average closing price from January through March 2009 was 43 cents.

31.     Several weeks later, on June 21, 2009, Magnum announced in a press release that Glusic filmed "an exclusive interview" with Roger Ballentine, former senior member of the Clinton White House staff. In the press release, Glusic was quoted as saying:  "We are extremely honored to be chosen by Mr. Ballentine and 21st Century Business Television to showcase our company and its revolutionary technology." That statement was false. Ballentine did not choose Magnum. Instead, Magnum retained the services of Multi-Media Productions (USA), Inc., 21st Century Business Television's producer, who hired Ballentine to appear on its shows. Further, Magnum issued other misleading statements in the same press release implying that Ballentine endorsed Magnum when in fact Ballentine was a paid infomercial spokesman and

discussed environmental issues generally as related to six different purported "green" companies, including Magnum.

32.     One day after the press release, on June 22, 2009 Magnum's trading volume spiked to more than 1.3 million shares.  Magnum's stock price closed at 99 cents per share, compared to the prior day's close of 82 cents.  In comparison, from May through June 19, 2009, Magnum's volume averaged 202,846 shares a day.

33.     Magnum's press releases coincided with the company's issuance of more than 12 million S-8 shares.  From no later than July 2008, the company issued S-8 shares to Allen, Flatt, and Sciucca, who then sold their shares during the same period Magnum issued the press releases.

34.     Magnum and Glusic knew at the time they issued the press releases the representations in them were false.  Glusic was Magnum's CEO and sole officer during the relevant time period, was quoted in nearly all of the releases outlined above, and Glusic and Magnum knew they were participating in a fraudulent S-8 kickback scheme.

## COUNT I

### SALE OF UNREGISTERED SECURITIES IN
### VIOLATION OF SECTIONS 5(a) AND 5(c) OF THE SECURITIES ACT
**(As to all Defendants)**

35.     The Commission repeats and realleges paragraphs 1 through 34 of this Complaint.

36.     Starting no later than 2008, the Defendants directly and indirectly, and notwithstanding that there was no applicable exemption: a) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statements was in effect; b) for the purpose of sale or delivery after sale, carried and/or caused to be carried through

the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statements was in effect; and c) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

37.     No valid registration statement was filed or in effect with the Commission pursuant to the Securities Act and no exemption from registration existed with respect to the securities and transactions described in this Complaint, specifically the distribution of Magnum shares issued pursuant to Forms S-8.

38.     By reason of the foregoing, the Defendants directly and indirectly, have violated, and unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT II

### VIOLATIONS OF SECTION 17(a)(1) OF THE SECURITIES ACT
**(As to Defendants Magnum and Glusic)**

39.     The Commission repeats and realleges paragraphs 1 through 34 of its Complaint.

40.     Starting no later than 2008, Magnum and Glusic directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employing devices, schemes or artifices to defraud.

41.     By reason of the foregoing, Magnum and Glusic, directly and indirectly, have violated and, unless enjoined, are reasonably likely to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a).

## COUNT III

### VIOLATIONS OF SECTIONS 17(a)(2) AND 17(a)(3)
### OF THE SECURITIES ACT
### (As to Defendants Magnum and Glusic)

42.     The Commission repeats and realleges paragraphs 1 through 34 of its Complaint.

43.     Starting no later than 2008, Magnum and Glusic, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or (b) engaged in transactions, practices and courses of business which are now operating or will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

44.     By reason of the foregoing, Magnum and Glusic, directly and indirectly, have violated and, unless enjoined, are reasonably likely to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

## COUNT IV

### VIOLATIONS OF SECTION 10(b) AND RULE 10b-5
### OF THE EXCHANGE ACT
### (As to Defendants Magnum and Glusic)

45.     The Commission repeats and realleges paragraphs 1 through 34 of its Complaint.

46.     Starting no later than 2008, Magnum and Glusic, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes

or artifices to defraud; (b) made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and courses of business which have operated, are now operating or will operate as a fraud upon the purchasers of such securities.

47.     By reason of the foregoing, Magnum and Glusic have directly or indirectly violated and, unless enjoined, are reasonable likely to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that the Court:

### Declaratory Relief

Declare, determine and find the Defendants committed the violations of the federal securities laws alleged in this Complaint.

### Permanent Injunctive Relief

Issue a Permanent Injunction, restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act, and restraining and enjoining Defendants Magnum and Glusic, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.

### Disgorgement and Prejudgment Interest

Issue an Order requiring each Defendant to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### Civil Money Penalties

Issue an Order directing each Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

### Officer & Director Bar

Issue an Order pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), barring Glusic from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. §78o(d).

### Penny Stock Bars

Issue an Order pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6), barring Defendants Glusic, Flatt, Sciucca, and Allen from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock.

### Bars From Receiving S-8 Stock

Issue an Order barring Defendants Flatt and Sciucca from owning, receiving, or purchasing from an issuer (as the term issuer is defined by Section 3(a)(8) of the Exchange Act) any security registered with the Commission on Form S-8 under the Securities Act.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated:   April 29, 2011                         Respectfully submitted,

By:

Christine Nestor
Senior Trial Counsel
Fla. Bar No. 597211
E-mail: nestorc@sec.gov
Direct Dial:  (305) 982-6367

Attorney for Plaintiff
**U.S. Securities and Exchange Commission**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone:     (305) 982-6300
Facsimile:     (305) 536-4154