UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-60920-CIV-JORDAN

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : |
| Plaintiff, | : : |
| v. | : : |
| MAGNUM D'OR RESOURCES, INC., JOSEPH J. GLUSIC, SHANNON ALLEN, DWIGHT FLATT, and DAVID DELLA SCIUCCA, JR., | : : : : |
| Defendants. | : : |
| _____ | : |

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW TO SET DISGORGEMENT, PREJUDGMENT INTEREST, AND IMPOSE CIVIL PENALTIES AGAINST DEFENDANTS DWIGHT FLATT AND DAVID DELLA SCIUCCA, JR.**

Plaintiff Securities and Exchange Commission requests the Court enter final judgment finding Dwight Flatt liable for disgorgement of $2,207,885.96 and prejudgment interest of $214,892.21, and ordering him to pay a civil penalty of $2,207,885.96; and enter final judgment finding David Della Sciucca, Jr., liable for disgorgement of $665,141.92 and prejudgment interest of $59,899.33, and ordering him to pay a civil penalty of $665,141.92.

## I. FACTUAL AND PROCEDURAL HISTORY

The Court entered Judgments of Permanent Injunction and Other Relief by consent against Sciucca and Flatt on December 8, 2011, and January 4, 2012, respectively (D.E. 36 and 39) (collectively "Judgments"). The Judgments ordered Flatt and Sciucca to pay disgorgement, prejudgment interest, and civil penalties in amounts to be determined upon the Commission's motion. DE 36 and 39. The Judgments to which Flatt and Sciucca consented preclude them

from arguing they did not violate the federal securities laws as alleged in the Complaint. In addition, solely for the purpose of this motion, the allegations of the Complaint are deemed true by the Court. DE 36 and 39 at Section IV. Therefore, the only issues for the Court to determine in this motion are the amounts of disgorgement, prejudgment interest, and a civil penalty it should order against Flatt and Sciucca.

In support of this motion, the Commission submits the declaration of Karaz Zaki, a certified public accountant, as Exhibit 1. This declaration evidences the disgorgement amounts the Commission seeks against Flatt and Sciucca. The Commission also attaches as Exhibits 2 and 3 its calculation of the prejudgment interest on these sums.

## Judgments of Permanent Injunction as to Flatt and Sciucca

The Judgments against Sciucca and Flatt enjoin each from future violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), order payment of disgorgement, prejudgment interest, and a civil penalty and impose penny stock bars and bars on receipt of S-8 stock. DE 36 and 39. The Judgments further provide:

### DISGORGEMENT AND CIVIL PENALTY

> **IT IS FURTHER ORDERED AND ADJUDGED** that [Flatt and Sciucca] shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]. The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission. Prejudgment interest shall be calculated from [August 4, 2009 and October 22, 2009], based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) [Flatt and Sciucca] will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) [Flatt and Sciucca] may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the

>standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

DE 36 and 39 at Section IV.

Thus, the Court has already ordered Flatt and Sciucca to disgorge, with prejudgment interest, all ill-gotten profits or proceeds they received, directly or indirectly, as a result of the acts or courses of conduct described in the Complaint, and pay a civil penalty based on their unlawful conduct.

## II.  MEMORANDUM OF LAW

### THE COURT SHOULD ORDER FLATT AND SCIUCCA TO PAY DISGORGEMENT, PREJUDGMENT INTEREST, AND A CIVIL PENALTY

1. Disgorgement and Prejudgment Interest

Disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws. *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989); *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985); *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987), *cert. denied*, 486 U.S. 1014 (1988); *SEC v. Manor Nursing Centers*, 458 F.2d 1082, 1103-1104 (2d Cir. 1972) ("The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable"). Furthermore, if securities laws violators were not required to disgorge illicit profits the "deterrent effect of an SEC enforcement action would be greatly undermined." *SEC v. Bilzerian*, 814 F. Supp. 116, 121 (D.D.C. 1993) citing *Manor Nursing Centers*, 458 F.2d at 1104. "The District Court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997).  In determining the

3

disgorgement amount, "it is proper to assume that all profits gained while defendants were in violation of the law constituted ill-gotten gains." *SEC v. Chemical Trust*, 2000 WL 33231600 at *12 (S.D. Fla. Dec. 19, 2000) citing *Bilzerian*, 814 F. Supp. at 120.

"The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). "The SEC's burden for showing the amount of assets subject to disgorgement . . . is light: 'a reasonable approximation of a defendant's ill-gotten gains [is required] . . . .  Exactitude is not a requirement.'" *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005) (quoting *Calvo*, 378 F.3d at 1217).  The SEC need only offer a prima facie reasonable approximation. *Bilzerian*, 814 F. Supp. at 121-22.  The burden then shifts to the defendant to demonstrate the Commission's estimate is not a reasonable approximation. *Calvo*, 378 F.3d. at 1217.

According to the Judgments to which Flatt and Sciucca consented, the Complaint's allegations are deemed true for purposes of this motion, so neither Defendant can dispute they committed violations of the registration provisions of the federal securities laws.

 2. <u>The Complaint's Allegations Against Flatt and Sciucca Deemed Admitted</u>

The following allegations of the Complaint are deemed admitted for purposes of this motion:

Beginning in 2008, Magnum d'Or Resources, Inc. issued misleading news releases touting the company's growth that increased the liquidity of its stock.  At the same time, Magnum used bogus consultants, including Flatt and Sciucca, to funnel more than $7 million in illicit stock proceeds back into the company, all in violation of the registration and anti-fraud provisions of the federal securities laws.  Complaint at ¶¶1 and 2.  In facilitating this kickback scheme, Magnum garnered the assistance of Flatt and Sciucca, to whom Magnum issued stock

4

pursuant to false Form S-8 registration statements. *Id.* at ¶2. Contrary to the requirements of Form S-8 registration statements, Flatt and Sciucca provided Magnum few or no permissible consulting services. *Id.* Instead, Flatt, Sciucca, and another defendant liquidated their S-8 stock, kept a portion of the sales proceeds, and returned more than $7 million of the remaining sales proceeds to Magnum under the guise of loan agreements. *Id.*

Form S-8 is available to register the offer and sale of a company's stock to employees or consultants under certain circumstances. Complaint at ¶ 13. The eligible employees or consultants must perform permissible services that are not in connection with a capital-raising transaction and do not indirectly promote or maintain a market for the stock. *Id.*

Form S-8 is not available to register offers and sales of securities to consultants where, by prearrangement or otherwise, the issuer or a promoter controls or directs the resale of the securities in the public market, or the issuer or its affiliates directly or indirectly receive a percentage of the proceeds from such resales. Complaint at ¶14. In addition, consultants who provide investor relations or shareholder communications services may not receive S-8 stock because of the promotional nature of their service. *Id.* An improper use of S-8 shares – i.e., under the prohibited circumstances described above – is not an effective Section 5 registration of the S-8 shares or their subsequent sale. *Id.* at ¶15.

Starting in 2008, Magnum issued millions of shares of S-8 stock to, among others, Flatt and Sciucca. Complaint at ¶12. Flatt and Sciucca provided Magnum few, if any, permissible services, and should not have received S-8 stock. *Id.* at ¶18. In fact, their "service" to the company was to funnel profits they had received from selling Magnum S-8 stock back to the company. *Id.* To further the ruse that Flatt and Sciucca were providing consulting services to Magnum, the company entered into multiple agreements with them from January 2008 through

October 2009. *Id.* at ¶19. According to the agreements, which were boilerplate, Flatt and Sciucca would, for the most part, "act as a consultant to the Company on such matters as the Company may reasonably request." *Id.*

Upon receipt of Magnum S-8 stock, Flatt and Sciucca sold it and returned a substantial portion of the sales proceeds to Magnum. Complaint at ¶20. Flatt and Sciucca's monthly brokerage account statements reflect hundreds of transactions showing that following receipt of Magnum S-8 stock, they: 1) deposited most of their shares at Bahamian broker-dealer Gibraltar Global Securities; 2) sold their shares usually within days of depositing their S-8 stock; and 3) either wired proceeds directly to Magnum's bank accounts from their Gibraltar accounts or indirectly through their personal bank accounts. *Id.*

Flatt, Sciucca, and a third consultant's Gibraltar accounts enabled them to work in concert with one another. Complaint at ¶21. In addition to using Gibraltar as a means through which to funnel S-8 share sales proceeds to Magnum, these S-8 recipients used Gibraltar as a means to freely transfer their S-8 shares and sales proceeds to one another. *Id.* For example, on June 23, 2009 Flatt transferred two million Magnum S-8 shares to Sciucca, who liquidated those shares and wired more than $1.7 million to Flatt. *Id.* During the same time, Flatt transferred funds to Magnum. *Id.*

Ultimately, Flatt, Sciucca and the third consultant received more than $10 million from the sale of their Magnum S-8 stock. Complaint at ¶22, They then transferred more than $7 million of these proceeds to Magnum under the guise of loans. *Id.*

To disguise the fraudulent transactions, Magnum concocted sham promissory notes, pursuant to which Flatt and Sciucca, among others, purportedly agreed to loan the company millions of dollars. Complaint at ¶23. Magnum entered into the promissory notes with Flatt,

6

Sciucca, and other Magnum S-8 recipients around the time it received S-8 stock sale proceeds. *Id.* However, many of the note amounts do not match up with the amount of S-8 stock sale proceeds Magnum received. *Id.* Further, all of the funds Flatt and Sciucca purportedly provided in exchange for the notes were derived from S-8 stock sales. *Id.*

3.     Amount of Disgorgement

As more fully detailed below, Exhibit 1 confirms Flatt received almost two million Magnum shares during the relevant time period. Zaki Dec., Ex. 1 at ¶¶3, 5, and 6. Ms. Zaki's declaration shows Flatt received and/or purchased those shares in two different accounts, one in his own name and one in the name of Spartan Equity Consultants, a company he controlled. *Id.* at ¶¶3, 5. Through various transfers and sales, Ms. Zaki has demonstrated Flatt received net proceeds of $2,207,885.96 from the sale of those shares. *Id.* at ¶¶3, 5, 6, and 9.

Ms. Zaki's declaration further shows Sciucca received more than eight million shares of Magnum stock during the relevant time period through a brokerage account in his name. Zaki Dec., Ex. 1, at ¶¶3, 8. He sold those shares for millions of dollars, but through various transfers retained only $665,141.92 in proceeds. *Id.* at ¶¶8, 9.

Therefore, the Court should order Flatt to disgorge ill-gotten gains of $2,207,885.96 plus pre-judgment interest and the Court should order Sciucca to disgorge ill-gotten gains of $665,141.92 plus pre-judgment interest.

4.     Amount of Prejudgment Interest

In addition to disgorgement, Flatt and Sciucca should pay prejudgment interest because they enjoyed access to the illicit funds over a period of time. To require them to pay prejudgment interest is consistent with the equitable purpose of the remedy of disgorgement. *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1089-90 (D.N.J. 1996), *aff'd*, 124 F.3d 449 (3d

Cir. 1997). A defendant's wrongdoing justifies awards of prejudgment interest in accord with the doctrines of fundamental fairness. *SEC v. Tome*, 638 F. Supp. 638, 639 (S.D.N.Y 1986). *See also SEC v. Poirier*, 140 F. Supp. 2d 1033, 1047 (D. Ariz. 2001) (to prevent unjust enrichment and to deter others from violating the securities laws, the Court has broad equity powers to order defendants to disgorge all illicit gains and impose prejudgment interest on those gains. Prejudgment interest is calculated in accordance with the delinquent tax rate as established by the Internal Revenue Service IRC § 6621(a)(2), and is assessed on a quarterly basis.).

In addition, pursuant to the Consents Flatt and Sciucca signed and the Judgments (DE 34-1 and 38-1 and DE 36 and 39), the Commission calculated prejudgment interest in accordance with the delinquent tax rate established by the Internal Revenue Service, 26 U.S.C. § 6621(a)(2), and assessed on a quarterly basis.

The prejudgment interest for Flatt was calculated from August 4, 2009, until the date of this motion.[1] The report is attached as Exhibit 2. Based on the principal amount of $2,207,885.96 in ill-gotten gains for which Flatt is responsible, the applicable prejudgment interest rate results in a total prejudgment interest amount of $214,892.21. Thus, Flatt's total disgorgement and prejudgment interest obligation is $2,422,778.17.

The prejudgment interest for Sciucca was calculated from October 22, 2009, until the date of this motion. The report is attached as Exhibit 3. Based on the principal amount of $665,141.92 in ill-gotten gains for which Sciucca is responsible, the applicable prejudgment interest rate results in a total prejudgment interest amount of $59,899.33. His total disgorgement and prejudgment interest obligation is $725,041.25.

---

[1] Commission counsel performed the prejudgment interest calculation on a specially designed prejudgment interest calculator on the Commission's network. Because March is not complete as of the date of this motion, the calculator performed the computation only through the end of February 2012. The same is true for the prejudgment interest report for Sciucca.

5.      The Court Should Impose Civil Penalties Equal to the Gross Amount of Pecuniary Gain

The Commission seeks civil penalties equal to the gross amount of pecuniary against Flatt and Sciucca pursuant to Section 20(d) of the Securities Act. The purpose of civil penalties is to punish the individual violator as well as deter future violations. *SEC v. Palmisano,* 135 F.3d 860, 866 (2d Cir. 1998); *SEC v. K.W. Brown*, 55 F. Supp. 2d 1275, 1314 (S.D. Fla. 2007); *SEC v. Tanner,* 2003 WL 21523978 at *2 (S.D.N.Y. July 3, 2003); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998); *SEC v. Moran,* 944 F. Supp. 286, 296 (S.D.N.Y. 1996). As set forth in H.R. Report No. 616 - the Report of the Committee on Energy and Commerce of the U.S. House of Representatives on the Remedy Act,

> [T]he money penalties proposed in this legislation are needed to provide financial disincentives to securities law violations other than insider trading ... Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud .... The Committee therefore concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator. (Citations omitted).

1990 WL 256464 *20, 1990 U.S.C.C.A.N. 1379 *1384 (Leg. Hist.), H.R. Rep. 101-616, H.R. Rep. No. 616, 101st Cong., 2nd Sess. 1990.

Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) provides for three tiers of penalties. Under the First-Tier, which applies here, the Court may impose a penalty of up to (i) $7,500 on an individual defendant for each violation or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation.[2]

Courts have determined that a violation occurs each time a defendant has acted to violate the securities laws. *See SEC v. Lazare Industs., Inc.*, 294 Fed. Appx. 711, 715 (3d Cir. 2008)

---

[2] The figures for all three tiers come from the Federal Civil Penalties Inflation Adjustment Act of 1990, which adjusted the potential penalty amounts to account for inflation based on violation dates. 17 C.F.R. §§201.1001-1003.

9

(for the purposes of assessing reasonableness of district court's assessment of $500,000 penalty, court considered each sale of unregistered stock as a separate violation); *SEC v. Coates*, 137 F. Supp. 2d 413, 430 (S.D.N.Y. 2001) (court calculated penalty by multiplying number of misrepresentations by penalty amount). Thus, the Commission could seek a First-Tier penalty for each of Flatt and Sciucca's violations or seek a civil penalty equal to the gross amount of pecuniary gain, which we are doing here.

Factors courts consider when assessing a civil penalty include the egregiousness of the violation, the isolated or repeated nature of the violations, the degree of scienter involved and the deterrent effect given the defendant's financial worth. *K.W. Brown*, 555 F. Supp. 2d at 1315; *SEC v. Yun,* 148 F. Supp. 2d 1287 (M.D. Fla. 2001). Application of these factors to Flatt and Sciucca's actions as alleged in the Complaint tilts the scales in favor of civil penalties equal to their pecuniary gain.

Flatt and Sciucca's actions were egregious in that their role in the S-8 fraud scheme was significant. Sciucca funneled more than $5 million in S-8 share sales proceeds to Magnum, and retained more than $665,000. Flatt on the other hand returned less money directly to Magnum and retained more for himself. He funneled more than $260,000 of his S-8 share sales proceeds directly to Magnum, and retained more than $2.2 million. These funds financed Magnum's operations during a time when Magnum's periodic filings reveal that it failed to generate any revenues until its year end September 30, 2009, when the company claimed to have revenues of only $85,070 with gross losses of $440,038. Furthermore, Flatt and Sciucca appear to have been working in concert with one another by transferring shares between their respective accounts.

Second, Flatt and Sciucca's actions were not isolated, rather repeated over the course of several months each in 2008 and 2009, and involved dozens of stock sales and transfers of

10

proceeds both back to Magnum and to each other. Moreover, based upon the public policy objective of deterrence, the Commission submits that a substantial penalty is necessary and appropriate to financially punish Flatt and Sciucca for their unlawful activities and to deter others from engaging in violations of the federal securities laws.

### III.  CONCLUSION

**WHEREFORE**, the Commission respectfully requests the Court enter Final Judgment against Flatt, finding him liable for disgorgement of $2,207,885.96, plus prejudgment interest of $214,892.21, and ordering Flatt to pay a civil penalty equal to his pecuniary gain of $2,207,885.96. The Commission also requests the Court enter Final Judgment against Sciucca, finding him liable for disgorgement of $665,141.92, plus prejudgment interest of $59,899.33, and ordering Sciucca to pay a civil penalty equal to his pecuniary gain of $665,141.92. Proposed Final Judgments are provided with this motion.

Date:  March 30, 2012                              Respectfully submitted,

By:  s/Robert K. Levenson
Robert K. Levenson
Regional Trial Counsel
Florida Bar No. 0089771
Direct Dial:  (305) 982-6341
Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida  33131
Telephone: (305) 982-6300
Facsimile:   (305) 536-4154

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 30, 2012 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Robert K. Levenson<br>Robert K. Levenson

**SERVICE LIST**

Stephen A. Zrenda, Jr., Esq.
Stephen A. Zrenda, Jr., P.C.
6303 N. Portland Avenue, Suite 300
Oklahoma City, OK 73112
Telephone: 405-721-7300
Facsimile: 405-601-0802
Email:  zrendaEsq@aol.com
*Counsel for Defendant Magnum d'Or Resources, Inc.*
Service via U.S. Mail

Dwight Flatt, *pro se*
5040 Sunrise Blvd
Delray Beach, FL 33484
Service via UPS Mail

David Della Sciucca, Jr., *pro se*
1027 Beekman Road
Hopewell Junction, NY 12533
Service via UPS Mail